All right, we'll hear the day calendar now. And the first case is Patricio Jimenez v. The City of New York. Thank you. Good afternoon, Your Honors. May I please the Court? My name is Brian Isaac. I represent the appellants in this matter. I guess it's election day, so it's probably apt to point out that I think the city lawyer and myself see this case through completely different prisms, as did Judge Scheindlin below. And what does that have to do with the election? I think people see issues through completely different prisms in the election, too. But let me tell you how we see the case, and we think it's an important case. Obviously, it's not a huge monetary case, but it is an important ethics case in terms of lawyers. Gregory Multon has no interest, nor does any lawyer who has any brain, have any interest in getting into a disagreement with a federal district court judge. It just doesn't make any sense. Before you get into this, into the merits, it seems to me that there's a conflict of interest here. I read your brief, and even though you purportedly represent both Mr. Jimenez and his client, all of the brief—I'm sorry, his lawyer—the entire brief is directed to trying to get up from under the sanctions imposed on counsel. I don't see any arguments in favor of the client, even though you purport to represent both of them. Well, the reason for that is your decision in Oliveri v. Thompson and the difference in the standards. In Oliveri, we analyzed the case, and we also analyzed what the sanction situation is. This is a 50— You're drawing in several liable for the sanctions, right? Yes, yes. If you win, the client absorbs the sanctions. Well, the issue is whether or not we had a reasonable possibility of actually beating the 42 U.S.— If you win, the client—if your arguments prevail, your client absorbs the sanctions. Yes. Mr. Multon's client— Isn't that a conflict? I don't think so, Judge, because I think we made a reasoned determination regarding what the difference is in attorneys' fees and sanctions. They're two different issues. And if you look at the Oliveri decision, which I'm reading right now at 803 F. 2nd at 265, you write, quote, What date is that case? Oliveri v. Thompson, 803 F. 2nd, 1265, Second Circuit, 1986. 19 what? 86. That's not my case. No, I meant the Second Circuit's case. I didn't mean your case. I'm sorry. I meant the Court's case. And then you go on to say, Significantly, the detailed findings of bad faith necessary to justify invocation of the inherent power exception to the American rule are not a prerequisite to an award of attorneys' fees under Section 1988. Indeed, subjective bad faith is not even a requirement for the imposition of sanctions in favor of a prevailing party. Quote, The proper test for that award is whether the claim itself is clearly meritless. If the claim is groundless, the mere fact that the plaintiff relies on his attorney's erroneous contrary advice does not relieve him of liability. What happened in this case was that the Court essentially found that there was a lack of probable cause. And if you look at the State antecedent decisions from the New York State Court of Appeals, specifically Bruton, Cologne, and Gisonde, those cases seem to state very, very clearly that police do have the power to make probable cause arrests. So there's a huge difference between issuing a repayment under 42 U.S.C. 1988 and actually sanctioning an attorney for zealously or attempting to zealously represent the client. These sanctions weren't issued under Section 1927 or the Court's inherent authority. These were Rule 46 sanctions. As to the attorney, that's correct. And we think that the rule is that the sanction is only appropriate, and this is also in Oliveri but there are some other cases, where the statement or the affidavit lacks any color of law whatsoever. And I would suggest to you that if you look at this case as I still don't understand why you don't have a conflict of interest. You haven't satisfied me that none exists. I think there are two different standards. I think that Mr. Multon's, the issue with respect to Mr. Multon is clear. I'm not sure that the interest with respect to the individual plaintiff himself is clear. These types of sanctions are awardable. Shouldn't someone be making it on his behalf? Perhaps not. You're not. I'm not. Mr. Multon retained me as the appellate lawyer to represent his interests in this matter, and that's why we have missing appellants. But Mr. Jimenez is just hanging out. He's not hanging out, but that's, I understand your concern. We didn't make the claim in our brief. Are you familiar with the record below? I am. Do you know if Mr. Multon ever interviewed Mrs. Jimenez without Mr. Jimenez being present? He said that he did in his affidavit. He said he interviewed her both with him being present and without her being present several times. I need the citation to that. 518 paragraph 9. 583? 518 paragraph 9. Having met with Mr. Jimenez both with and without Mr. Jimenez present, she has at all times appeared credible to me, even when confronted with various reports that contradicted her version of the events. So, again, with respect to this matter, it seems to me that if you look at what Mr. Multon had when he first had the case, you have the Sprint report, which clearly indicates that there was no domestic abuse. You have, perhaps even more importantly, a piece of information that was relied on by the city very, very heavily below, 298 and 299, which is the domestic incident report, which misidentifies the race of the wife, misidentifies the name of the husband, the plaintiff, and most importantly, on page 299 of the record, actually gives information which is actually exculpatory to the plaintiffs with respect to there being any domestic violence at all. Specifically, 299, and I'm quoting, P1 stated P2, P1's the wife, stated P2 came home drunk, P1 got mad, started choking P2, then P2 slapped and twisted P1 arm behind back, causing substantial pain. P1 originally called an ambulance for a fall in the bathroom, then story changed at hospital, says which, it should be when social worker notified police, no visible injuries observed, but P1 complained about pain in the right shoulder. So again, this is a version of the event that the police relied on, which actually has the wife attacking the husband after he came home drinking, and there's- You've reserved three minutes. Oh, I am, I'm sorry. You can take it now if you want. Can I just finish this thought and then I'll cut myself to two minutes? So this is, again, the kind of exculpatory evidence that Mr. Moulton had, and I think at the time when he decided to go ahead, he was really trying to represent his client's interests the best he could, as opposed to just not submitting an affidavit and abandoning the claim completely. Thank you. So you will reserve two minutes in due course. All right. Let's hear from the city of New York. May it please the court, Jeremy Schwader for appellees. To go to the conflict of interest point, I do believe there is a conflict of interest here. What I guess I'm hearing is that Mr. Jimenez has agreed that he doesn't have claims. I mean, that's the only thing I can understand him to be saying. I do think that at the very beginning there should have been another attorney to look at this and decide that on behalf of Mr. Jimenez. Do you believe that it was a conflict of interest? No, I don't really believe that's our issue to argue. I just wanted to answer this. Well, you might want to call the court's attention if you believed it to be true. Well, we did point out in our brief that to the extent that Mr. Mouton prevails here, Mr. Jimenez is going to be left with this bill because he has not raised merits arguments on this case. The only arguments on behalf of Mr. Jimenez had to do with the excusable neglect issue, which isn't even a live issue in the case anymore. So Mr. Jimenez doesn't have an attorney in this matter? I don't believe he does because I see that in this case he's represented by appellate counsel. And I'll also say that below, Mr. Mouton did not make these arguments on behalf of Mr. Jimenez in the court below. So he took the same position that he's doing now, that they're doing now, which is that opposing the sanctions against him on the merits, not opposing the fees on the merits, only opposing the fees as the motion being untimely filed, which it wasn't, of course. And it's interesting that my adversary cites to Oliver A. Thompson because in that case, this court said that attorney sanctions exist to fine tune our litigation system and weed out some of its abuses to improve the dispute resolution process. And I would say that this case presents a prime example of conduct that's in need of improvement. The district court, in its discretion, sanctioned counsel under Rule 56H after determining that he had actively participated in the submission of a false affidavit, that he knew it was a false affidavit. And he did this to survive summary judgment. Now for the affidavit of Mrs. Jimenez to be true, it would have had to involve a huge conspiracy of independent people with no motivation to get Mr. Jimenez arrested. That's what we have here. You have documentary evidence, contemporary documentary evidence, saying that Ms. Jimenez, when she is in the EMT, in the ambulance, the EMT writes, her husband was drinking, goes up to her, puts her arms behind her backs, and smacks her multiple times. Then she goes to the hospital. The hospital talks to her in her language, which is Spanish. They say she was in an altercation with her domestic partner. This is what she reports to the hospital. Then there's a volunteer victim's advocate who interviews her. Independent people. She writes, he pulled her hair. She fought back to defend herself. He twisted her arm back. She later puts in an affidavit that says, I remember using an interpreter to talk to her. And in no uncertain terms, Ms. Jimenez told me that she was abused by her husband. And then we have two independent police reports as well that they've written up where she reports to them that she has been abused by her husband. These are independent people who do not talk to each other, are taking contemporaneous notes of what she reports. The affidavit was obviously false. And I want to address just briefly this idea that zealous advocacy is something that we want to promote, and of course we do. And I think that this case goes beyond. And I think the court was correct in its discretion in finding that it did for two reasons. One is, this is not a hindsight case, and that's what Oliveri was. That was a hindsight case where you look back and you say, well, at the time, the pleading over whatever else was filed, the attorney had a reasonable idea to think that what he put in was true, and we only later discovered evidence that made it not. At the time that this affidavit was put in, all the evidence was out there. Everything was known. We know nothing new now that we didn't know then. But Mr. Mouton still put in this affidavit, knowing about all these documentary evidence, that really flatly contradicted the affidavit. The second thing is that Mr. Mouton took steps during this case to try to suppress, in frivolous steps, to try to suppress these documents, and the district court rejected them. But he knew that these torpedoed his claim, and he tried over and over again to get them thrown out. He tried to have sanctions put against the city attorneys for relying on them. And these are the steps that the district court correctly considered in her discretion to look at this and say, this is conduct that's sanctionable. I'll rest on my brief unless the court has further questions about this. Thank you. Thank you. I'll be brief too, just if I can. The hospital record delineates here that we keep talking about this being as a domestic abuse case. And any time a man puts his hand on a woman, that's just a terrible thing to do. But she wasn't beaten. She didn't have visible marks. And the gravamen of the case- She told the ambulance people she did. Well, she told the ambulance people she did, but she doesn't speak, again, she only speaks Spanish. And the hospital record that- They can't say that in Spanish. Well, they can, except the hospital record doesn't say what my adversary says. It's on essay seven. It doesn't say that there was any independent interpreter present. In fact, it says, and this is in quotes, chief complaint, quote, per EMS domestic abuse. The Ms. Cohen, whose affidavit my adversary referenced as well, says specifically, and this is in essay 11, the report has refreshed my recollection, and I have a specific recollection of speaking with Ms. Jimenez through a Spanish interpreter. Problem is, there was no interpreter there at 3 o'clock in the morning. That's on 589. Didn't they do one over the phone? Excuse me? Didn't they have an interpreter on the phone? But there's no evidence that they had the interpreter, and she didn't say that she did it on the phone. And Mr. Mouton gave a whole detailed explanation of the different scenarios that they have in the phone systems that they have. There's no evidence that that phone system was used at all. So there are these inconsistencies. Again, no plaintiff's lawyer is going to want to take a contingency case that isn't a meritorious case, and no one's going to want to continue with a meritorious case that's going to be ferociously litigated. But I think it's fair to say that he really did have a good faith belief in the client. He had a good faith belief in the case, and he didn't want to abandon the client when he was confronted with a judge who expressed serious reservations about the claim that actually came true. Thank you. All right, before you sit there, I want the record to be clear. You were representing Mr. Mouton as both Mr. and Mrs. Jimenez. They're all appellants, but as counsel said, the motion below was- Who were you representing? I was retained by Mr. Mouton. You were representing today before us. I'm representing, the notice of appeal says everyone, so I would be representing everyone. Thank you very much. We'll reserve the decision.